## Neill v. Civil Service Commission of the Township of Bristol

*John S. Neal, Jr.*, for appellant.

*William J. Carlin*, for appellee.

FULLAM, J., October 8, 1963.—This appeal by a Bristol Township police officer from a civil service commission order of suspension is before the court for disposition on the record before the civil service commission, supplemented by one additional exhibit, a copy of the "Code of Discipline" of the police department in question.

It appears that on the evening of July 4, 1962, appellant, in full uniform, was dispatched to a taproom to investigate a disturbance. When he arrived, the disturbance had ended, and the participants were no longer on the scene. Appellant was offered, and accepted and consumed, "two or three shots" of whiskey. Some of the patrons of the establishment were dancing the "Twist" at the time, and appellant participated briefly in this activity.

Appellant then transported to their homes, in the police car, two female patrons who had been left stranded by reason of the departure of their escorts in connection with the original altercation at the tavern. In compliance with what was apparently police department procedure, in order not to be alone in the car with the two women, appellant invited a male patron to accompany them. Appellant returned to the taproom about a half hour later to make sure the original disturbance had not resumed. He did not have anything further to drink, but he did permit, and in fact direct,

a civilian bystander to drive the police car a short distance. It appears that when appellant entered the taproom on his return visit, it was brought to his attention that the police vehicle was blocking an exit from the parking lot in such a way that certain patrons were unable to get their vehicles out of the lot. Appellant came to the door of the taproom, called out to the patrons in question the fact that the keys were in the police car and they could move it themselves, whereupon one of them proceeded to do so.

The foregoing events having come to the attention of appellant's superiors, an investigation ensued, and on August 31, 1962, the chief of police entered an order suspending appellant for one year and indicating a recommendation to the township commissioners for appellant's dismissal from the police force. On September 5, 1962, at a special meeting, the township commissioners voted to uphold the action of the chief of police and dismissed appellant from the force, effective August 31, 1962. On appeal, the township civil service commission concluded that appellant was guilty of improper conduct, but that the penalty of dismissal was too severe under the circumstances. Accordingly, the commission entered an order suspending appellant from the police force for a period of one year, beginning August 31, 1962. This appeal followed.

Article VI, sec. 645, of the First Class Township Code, Act of June 24, 1931, P. L. 1206, as amended, 53 PS §55645, under which this appeal is brought, provides that on appeal to the court of common pleas ". . . the case shall there be determined *as the court deems proper* . . ." (Italics supplied.)

In Lower Merion Township v. Turkelson, 396 Pa. 374 (1959), it was held that, under this language:

"The statute clearly gives the Court of Common Pleas full discretion to affirm, reverse or modify the action of the Civil Service Commission."

Appellant presented no evidence, and the facts are not in dispute. The sole question presented is the determination of the proper penalty under the circumstances. Since the events of July 4, 1962, standing alone, clearly constitute a flagrant example of "conduct unbecoming an officer" it would seem that his immediate dismissal from the police department would not have been too severe a penalty. Accordingly, there could be no question about our affirming the reduced penalty imposed by the civil service commission, were it not for the fact that the township commissioners have adopted a "Police Code of Discipline" which seems to provide less stringent penalties for this type of offense. Counsel for appellant argue, with considerable force, that the aberrations of July 4, 1962, most nearly resemble the offense of "odor of alcohol on breath," for which section 1.60 of the code of discipline provides a penalty of 10 days suspension for a first offense, or "intoxication on duty", for which section 2.01 of the code of discipline provides a penalty of 30 days suspension for a first offense within two years.

The opinion and order of the civil service commission do not mention the code of discipline, or relate the penalty imposed to any of the scheduled penalties under the township's own regulations. We note that in Lower Merion Township v. Turkelson, supra, the Supreme Court expressly refrained from deciding whether a civil service commission is bound to impose penalties made mandatory by township regulations; but we do not understand this opinion as suggesting, in any way, that a civil service commission could properly uphold a dismissal or other severe penalty which was in violation of the township's own regulations.

Accordingly, if the "Police Code of Discipline" in the present case contained nothing more than the specific offenses and schedule of penalties, it would be impossible to justify the one-year suspension imposed by

the commission. However, the code of discipline further provides, in section 3, as follows:

"Section 3. Repeated violations of department rules and regulations or any other course of conduct indicating a man has little or no regard for the obligations of members of the Police Department shall be cause for dismissal. This shall apply regardless of the severity of the offenses, regardless of any reckoning period, and regardless of whether these violations are of the same type."

It seems reasonably clear to us that the chief of police and township commissioners were proceeding under this section in originally dismissing appellant. The written notice of August 31, 1962, after specifically charging neglect of duty, disobedience of orders and conduct unbecoming an officer, by reason of the July 4th incidents mentioned above and summarized in the notice, contains the following language:

"Your actions on this particular day are aggravated by the fact that your prior record in the Police Department indicates a number of violations, suspensions and reprimands. In light of this particular offense and your prior record, I hereby suspend you for a period of one year and shall recommend to the Board of Commissioners at its special meeting to be held Wednesday, September 5, 1962, that you be dismissed from the Police Force of Bristol Township."

Reviewing the evidence as a whole, it is clear that appellant, prior to his suspension had not been a satisfactory police officer. On April 12, 1960, appellant was suspended for two days for unexplained failure to report for duty. On July 15, 1960, appellant was suspended for 15 days on a charge of direct refusal to obey the orders of a superior officer. The civil service commission in the present case held that it could not consider this infraction, because appellant had appealed from the suspension to the civil service commis-

sion then in office and that appeal had never been disposed of. In our opinion, under the peculiar circumstances, in excluding the 1960 incident from consideration, the commission erred in favor of appellant. In the first place, the appeal to the commission in 1960 did not act as a supersedeas, and the 15-day suspension still stands unless and until it is properly reversed. Moreover, while the failure to hold a hearing in the matter in over two years was undoubtedly the fault of the previous commissioners then in office, the fact remains that appellant took no action to require them to dispose of the appeal, but was apparently content to let the matter ride. But more importantly, the *facts* of the 1960 incident were presented to the commission in the present case, and these facts can properly be considered in determining the penalty and could be so considered, even if no disciplinary action whatever had been taken at that time.

It may well be that, as to any alleged prior difficulties which had never been called to appellant's attention at the time, by way of disciplinary action, fitness reports or otherwise, it would have been improper to receive evidence thereof, unless they were specifically charged in the notice of dismissal in the present proceeding. But the written charges in the present case clearly put appellant on notice that his previous record in the department would be an issue.

Regarding the July 1960 incident, there was evidence of an occasion when appellant returned to police headquarters at the conclusion of a tour of duty in a patrol car, exhibiting evidence of at least some degree of intoxication; that he made unauthorized use of the police radio; and that when the chief of police, later the same evening, attempted to discuss these allegations with appellant, appellant engaged in a vulgar and profane tirade. The chief ordered appellant to cease and desist from using profane language in the chief's office,

and advised him that if he continued to use such language, he would be suspended. Appellant continued to use profane language, and the 15-day suspension for "disobedience of orders" resulted.

This evidence was received subject to later ruling on appellant's objection that it should not be received because the suspension had been appealed from and the appeal had not been decided. When the testimony before the civil service commission ended, the commission had not yet ruled on this question. Although appellant presented evidence to establish that his appeal had not been disposed of, he made no denial of the testimony as to the occurrence, and no attempt was made on cross-examination to impeach or weaken the township's testimony on this subject. It is theoretically possible, however, that since the commission ultimately ruled in appellant's favor on the evidence question and disregarded the July 1960 incident, this evidence should not now be considered by us without first affording appellant some further opportunity to contradict it. We deem it unnecessary to decide this question. In our opinion, if the commission had considered this incident, there would have been no basis for reducing the penalty from dismissal to suspension; in the absence of any present request to do so, we are not disposed to reinstate the dismissal in any event and, therefore, need not pursue the July 1960 incident further.

In October of 1961, appellant was administered an official reprimand for failure to meet his financial obligations. This was the result of several complaints to that effect received by his superiors.

Appellant was entitled to 26 days sick leave per year. For the past several years, it appears that appellant invariably equalled or exceeded this quota. The township did not establish or attempt to establish that these absences due to alleged illness were not justified, except

for the one occasion when he was suspended, referred to above; on the other hand, there is no evidence in the record as to the nature of the alleged illnesses. Under the circumstances, the commission acted properly in disregarding these extended absences in the present case.

Appellant's fitness reports, two of which were introduced by appellant, reveal consistently poor performance in virtually every facet of his job. While the two reports introduced by appellant bear notations indicating that appellant's illness may be the cause of his poor performance, it is a fair inference that these are not the kinds of fitness reports that would be filed if excusable illness were the sole or principal basis of poor performance.

It is important to remember that the relationship between a township and its police officers is an employer-employe relationship. Except as otherwise provided under civil service requirements, a police officer has the same duties, and his employer has the same rights, as prevail in private employment. The civil service laws protect appellant from disciplinary action which is discriminatory or otherwise unrelated to merit; but they do not provide a guarantee of permanent employment, nor do they confer exemption from reasonably adequate performance as an employe. Municipal authorities have not only a right, but a duty, to insist upon observance of the highest standards of personal conduct by police officers.

To summarize, we hold that the township, having specifically charged and clearly proved actions by appellant which constitute at the very least "conduct unbecoming an officer" within the meaning of the civil service laws, it was proper for the township officials and the civil service commission to consider appellant's

previous difficulties and overall performance, in determining what disciplinary action should be taken. We see no basis for interfering with the disposition made by the civil service commission in this case.

*Order*

And now, October 8, 1963, for the reasons set forth in the foregoing opinion, the order of the Bristol Township Civil Service Commission, suspending appellant for a period of one year from August 31, 1962, is affirmed.